UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE TATUM,

Plaintiff,

-v-

CITY OF NEW YORK et al.,

Defendants.

19 Civ. 2581 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

In October 2018, Wayne Tatum lived at a shelter and received a package in the mail. Police officers with the Department of Homeless Services ("DHS") who worked at the shelter placed the package through an X-ray machine and asked Tatum to open it and reveal its contents before he could bring it upstairs. Tatum alleges that this conduct, and other related conduct by three DHS officers involved in the incident, as well as another individual who allegedly was responsible for setting policies at the shelter, violated his rights guaranteed by the Fourth Amendment to the United States Constitution. He brought this action against those individuals and the City of New York in response.

The City of New York and the three DHS officers brought a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants this motion, but grants Tatum leave to file an amended complaint.

## I. Background

### A. Factual Allegations

The following factual allegations are taken from the Complaint, Dkt. 2 (the "Complaint" or

"Compl.") and any documents incorporated by reference. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). The Court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

At the time of the filing of the Complaint, Tatum was a "public assistance recipient" who received benefits through the New York City Human Resources Administration. Compl. ¶ 7. In 2018, Tatum lived at a shelter called the Parkview Inn. *Id.* ¶ 19. On October 21 of that year, a security guard told Tatum that he had received a package in the mail. *Id.* Tatum went downstairs to retrieve the package. *Id.* ¶ 20. Officer Davis, a DHS officer who worked at Parkview Inn, *id.* ¶ 12, called Tatum over to her. *Id.* ¶ 21. Officer Davis had a box "at or near her feet." *Id.* As Tatum began to pick up the package, Officer Davis pointed to the monitor of an X-ray machine that apparently displayed images of the package. *See id.* ¶ 22. She asked Tatum, "what the hell is in there" and whether the box contained a lamp with shades. *Id.* ¶ 22 (internal quotation marks omitted). Officer Davis then told Officer Matos, another DHS officer assigned to the Parkview Inn, *id.* ¶ 13, to adjust the monitor screen, apparently so that Tatum could get a better look. *Id.* ¶ 23.

Tatum says he was in "disbelief" that Officers Davis and Matos "pried into [his] mail before it was delivered to [him]" and that Officer Davis would "ask about the contents." *Id.* ¶ 24.[1] Tatum did not answer Officer Davis and instead walked away with the box. *Id.* ¶¶ 25-26. He also told Officer Davis that "it's against the law for [her] to go in [Tatum's] mail." *Id.* ¶ 26. Officer Davis told Tatum to return to where she was with the package. *Id.* ¶ 27. She took the package back and summoned Sergeant Facey, a DHS police sergeant, *id.* ¶ 11, via a police radio. *Id.* ¶ 27.

---

[1] Tatum alleges this disbelief despite the fact that he knew that the Parkview Inn treated all packages in this manner and alleges that DHS officials would "regularly pry" into packages. *Id.* ¶ 34 & n.1.

Sergeant Facey arrived and told Tatum that he could not take his package upstairs unless he opened it in front of the officers. *Id.* ¶¶ 28-29. Tatum responded by going upstairs to "get a copy of the federal law that makes it an offense to obstruct one[']s mail correspondence." *Id.* ¶ 30. Tatum returned and apparently cited 18 U.S.C. § 1702.[2] *See* ¶¶ 31, 38. Sergeant Facey replied, "when you come to this facility you give up certain rights and, we are allowed to do this." *Id.* ¶ 31. Tatum asked Sergeant Facey whether he suspected a threat with regard to his package, but Sergeant Facey did not reply. *Id.* ¶¶ 32-33. Tatum then opened the box in front of Sergeant Facey and revealed that it contained several lamps and shades. *Id.* ¶¶ 35-36. Sergeant Facey replied, "now was that hard?" *Id.* ¶ 36 (internal quotation marks omitted). Tatum then took the package upstairs. *Id.* ¶ 39. Two days later, Tatum was given a "notice of infraction for allegedly failing to sign the attendance roster." *Id.* ¶ 57. Tatum says that Sergeant Facey "directed" this citation as retaliation for Tatum's objection to the DHS officers' treatment of his package. *Id.* ¶¶ 58-59.

Prior to the package incident, Tatum had written a letter to Nikkal Barnes, the program director of Aguila, Inc., *id.* ¶¶ 10, 40, which apparently is a private entity that served as the service provider for the Parkview Inn at the time, *see* Dkt. 37 at 2 n.4. In the letter, Tatum complained about DHS officers' practice of placing shelter residents' packages through an X-ray machine. Compl. ¶ 40. Tatum delivered that letter to Barnes by hand on April 11, 2018, and also mailed a copy to Sergeant Facey. *Id.* ¶¶ 43-44. He did not receive a response from Barnes. *Id.* ¶ 45. But on April 17, 2018[3], another DHS officer handed Tatum the letter that he mailed Sergeant Facey and told Tatum that he "could have just asked [that officer] for the rules that allow them to do what

---

[2] This section of the United States Code is a criminal statute, which prohibits taking a package "with design to obstruct the correspondence, or to pry into the business or secrets of another." 18 U.S.C. § 1702.

[3] The Complaint says this occurred on April 17, 2019. But the Court assumes it occurred on April 17, 2018 since the Complaint was filed on March 21, 2019.

[Tatum] was complaining of." *Id.* ¶ 46. That officer then gave Tatum a copy of "DHS Procedure No. 108-04" and a copy of something called the "House Rules." *Id.* ¶ 47.

On June 29, 2018, Barnes "attempted to transfer [Tatum] to another facility" against his will. *Id.* ¶ 51. Tatum filed a grievance against the transfer, and it never happened. *Id.* ¶¶ 52-53. Tatum says that he filed at least seven grievances regarding problems at the Parkview Inn, but none were handled by Barnes or DHS "in the manner prescribed by DHS Rules." *Id.* ¶¶ 54-55.

**B. Procedural History**

Tatum initiated this action on March 21, 2019 with the filing of the Complaint against the City of New York, the New York City Human Resources Administration ("HRA"), Sergeant Facey, Officer Davis, Officer Matos, and Barnes. *See id.* at ¶¶ 8-13. Because Barnes is not a City employee, the Court refers to all Defendants except Barnes collectively as the "City Defendants."

In the Complaint, Tatum brings a single claim pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights protected by the Fourth Amendment. *Id.* ¶¶ 60-72. Specifically, he alleges that Sergeant Facey, Officer Davis, and Officer Matos violated his rights when they "pried into [his] mail package through the x-ray machine and seized [his] package for no lawful reason." *Id.* ¶¶ 63, 65, 67. Sergeant Facey further allegedly violated Tatum's rights when he forced Tatum to open the package, and Barnes did so when she "directed that all mail packages" be placed through the X-ray machine. *Id.* ¶¶ 64, 68. Tatum also alleges that Officer Davis violated his rights when "she momentarily detained [him] directing that [he] wait for [Sergeant] Facey" to arrive. *Id.* ¶ 66. Finally, he claims that Defendants' acts were "the direct result of an internal custom or practice that is not written or formally adopted, but that is a pervasive, longstanding practice that has deprived [Tatum] of the right to privacy, and to be secured in his person, house, papers and effects, against unreasonable searches and seizures," and thus appears to allege the City itself is liable as well. *Id.*

¶ 70.

This case was initially assigned to the Honorable Edgardo Ramos. On April 26, 2019, Judge Ramos dismissed HRA as an entity unable to be sued and ordered service on the remaining Defendants. Dkt. 5. Because Tatum had been granted permission to proceed *in forma pauperis*, he was entitled to rely on the Court and the United States Marshals Service to effect service. *Id.* at 2; *see* 28 U.S.C. § 1915(d). On August 2, 2019, Judge Ramos extended the time to answer the Complaint to thirty-five days after the last individually named officer was served. Dkt. 16.[4]

This case was reassigned to the undersigned on October 5, 2020, at which point all Defendants had not been served. On November 10, 2020, the Court held a conference and ordered monthly status letters updating the Court on the status of service. On December 1, 2020, counsel for the City informed the Court that service had been effected on all the City Defendants, but that Barnes still had not been served. Dkt. 32. Because service had been effected on the City Defendants, this triggered their time to answer or otherwise respond to the Complaint in accord with Judge Ramos's previous order. Dkt. 16; *see* Dkt. 32 at 2.

On December 14, 2020, the Court granted the City Defendants leave to file a motion to dismiss. Dkt. 34. On January 4, 2021, the City Defendants filed their motion to dismiss, Dkt. 35, a declaration and several exhibits in support of their motion, Dkt. 36, and a memorandum of law, Dkt. 37 ("Motion"). On March 16, 2021, Tatum filed an affidavit in opposition to the City Defendants' Motion that was dated January 25, 2021. Dkt. 49. The City Defendants filed a reply brief on March 23, 2021. Dkt. 53. Barnes has not moved to dismiss the claims against her.[5]

[4] On June 18, 2020, as part of this action, Tatum filed an emergency motion for a temporary restraining order to prevent his transfer from one shelter to another. Dkt. 22. At a conference on June 23, 2020, Judge Ramos denied this request, and Tatum sought no further relief.

[5] Barnes appeared in this case and filed an answer on February 19, 2021. Dkt. 47.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the plaintiff must allege facts that "nudge[] [his] claim[] across the line from conceivable to plausible." *Id.* at 570. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro*, 807 F.3d at 544, it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

The Court must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). But a *pro se* complaint still "must state a plausible claim for relief." *Id.* (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)). "Even in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## III. Discussion

Liberally construing Tatum's Complaint, he appears to allege the following: (1) Sergeant Facey, Officer Davis, and Officer Matos violated Tatum's Fourth Amendment rights when they subjected his package to an X-ray; (2) Officer Davis violated Tatum's Fourth Amendment rights

when she "momentarily" directed Tatum to wait for Sergeant Facey; (3) Sergeant Facey violated Tatum's Fourth Amendment rights when he required Tatum to open his package before bringing it upstairs; (4) Sergeant Facey violated Tatum's First Amendment rights[6] when he allegedly retaliated against Tatum; and (5) the City is liable pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for devising an custom or practice that violated Tatum's rights.

For the reasons stated below, the Court concludes that Sergeant Facey, Officer Davis, and Officer Matos are entitled to qualified immunity with regard to Tatum's Fourth Amendment claims, that Tatum has failed to plead facts plausibly alleging a First Amendment retaliation claim, and that Tatum has failed to plead facts plausibly alleging *Monell* liability against the City.[7]

**A. Fourth Amendment Claims**

"Qualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson v. Callahan*, 555. U.S. 223, 231 (2009)). "[T]he 'driving force' behind creation of the qualified immunity doctrine [is] a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery.'" *Id.* at 706 (alterations in original) (quoting *Pearson*, 555

---

[6] Tatum does not plead a cause of action pursuant to the First Amendment. But the City Defendants treat these allegations as arising under that amendment, and liberally construing the Complaint, the Court treats it as such since the alleged retaliatory conduct would not seem to fall within the bounds of the Fourth Amendment.

[7] In his Opposition, Tatum failed to respond to the City Defendant's arguments that (1) Sergeant Facey, Officer Davis, and Officer Matos are entitled to qualified immunity or (2) that Tatum's purported First Amendment retaliation claim should be dismissed. A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). However, in light of the fact that Tatum is proceeding *pro se*, the Court does not deem any of Tatum's claims abandoned due to his failure to respond to these arguments. *See Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 61 n.9 (S.D.N.Y. 2019).

U.S. at 231).

The two-pronged analysis for qualified immunity requires a court to determine (1) "whether plaintiff has shown facts making out [a] violation of a constitutional right," and (2) "if so, whether that right was clearly established." *Mudge v. Zugalla*, 939 F.3d 72, 79 (2d Cir. 2019) (alteration in original) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)); *accord Pearson*, 555 U.S. at 234, 236. Even if the right was clearly established, the court also must assess "whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Mudge*, 939 F.3d at 79 (quoting *Gonzalez*, 728 F.3d at 154). A court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson*, 555 U.S. at 236).

Under the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In other words, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Moreover, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). While the Supreme Court does not "require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting

*al-Kidd*, 563 U.S. at 741). "Such specificity is especially important in the Fourth Amendment context." *Id.* at 12.

The Court readily dispels of Tatum's Fourth Amendment claims against Sergeant Facey, Officer Davis, and Officer Matos under the second prong of the qualified immunity analysis because their conduct did not violate a "clearly established right." *Id.* at 11. In his Opposition, Tatum points to no controlling authority clearly establishing the rights at issue here. This alone seems to suggest that qualified immunity applies. *See Sampedro v. Schriro*, 377 F. Supp. 3d 133, 141 (D. Conn. 2019) (explaining that because the plaintiff "d[id] not cite any apposite authority in support of" the proposition that an officer violated his rights, "[i]t necessarily follow[ed] . . . that [the officer] could not have violated a 'clearly established' constitutional right"). Even so, the Court is not aware of any controlling authority that suggests that the DHS officers here violated a clearly established right. For example, the Court is aware of no authority from the Supreme Court (or any other court for that matter) that has held that placing a package through an X-ray machine violates the Fourth Amendment, particularly when the practice is used as an apparent security measure at a shelter. Nor is the Court aware of any authority holding that an officer who tells an individual to wait for a supervisor to arrive seizes that individual for purposes of the Fourth Amendment. Finally, the Court knows of no case that says that requiring a shelter resident to open a package in front of officers before bringing it to the resident's room violates the Constitution. In short, none of the named officers acted in a way that "every reasonable official would have understood" was a violation of the Fourth Amendment. *Mullenix*, 577 U.S. at 11 (internal quotation marks omitted).

Because Sergeant Facey, Officer Davis, and Officer Matos did not violate a clearly established right with regard to Tatum's Fourth Amendment claims, they are entitled to qualified immunity. The Court thus grants the City Defendants' motion to dismiss with regard to Tatum's

Fourth Amendment claims against those Defendants.

**B. First Amendment Claim**

The Court construes Tatum's retaliation claim under the First Amendment. "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoting *Hartman*, 547 U.S. at 256).

"Generally, in order to state a claim for First Amendment retaliation, a private citizen normally must allege that: '(1) [the plaintiff] has an interest protected by the First Amendment; (2) [the] defendants' actions were motivated by or substantially caused by his exercise of that right; and (3) [the] defendants' actions effectively chilled the exercise of his First Amendment right.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 710 (S.D.N.Y. 2011) (second and third alternations in original) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Even assuming Tatum's objection to the shelter's package policy was protected by the First Amendment, he has not pleaded facts that sufficiently demonstrate Sergeant Facey's actions were "motivated by or substantially caused by," *id.* (internal quotation marks omitted), Tatum's exercise of that right or that Tatum's First Amendment rights have been chilled as a result.

Tatum alleges only that two days after the package incident, he "was cited with a notice of infraction for allegedly failing to sign the attendance roster" and that he "believes that this was in retaliation to his objection of DHS Police searching his mail package." Compl. ¶¶ 57-58. Such threadbare allegations do not "nudge[]" Tatum's claim "across the line from conceivable to

plausible." *Twombly*, 550 U.S. at 570. Tatum pleads no facts to suggest that the "notice of infraction" he received had anything to do with the incident regarding his mail. A conclusory statement that Tatum himself "believes" it was in retaliation, Compl. ¶ 58, without more, is simply not enough to survive a motion to dismiss. Tatum's further allegation that Sergeant Facey "directed the infraction," *id.* ¶ 59, does nothing to advance his claim. A sergeant like Facey directing such action in general does not necessarily mean it had a causal connection to Tatum's exercise of allegedly protected speech. And none of Tatum's allegations suggest that his First Amendment rights were chilled. *See Schubert*, 775 F. Supp. 2d at 711 (explaining that a plaintiff must allege facts that show the alleged "retaliatory conduct either silenced [him], or had some 'actual non-speculative chilling effect on [his] speech'" (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008))).

Because the Complaint's factual allegations do not "raise a right to relief above the speculative level" with regard to this claim, *Twombly*, 550 U.S. at 555, Tatum's allegations are not plausible. The Court thus grants the City Defendants' motion to dismiss with regard to Tatum's First Amendment claim.

**C. *Monell* Liability**

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *accord Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant

to that policy, a municipal actor has tortiously injured the plaintiff."). A plaintiff may plead facts of a policy or custom by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Here, the only alleged facts in the Complaint regarding possible *Monell* liability are that Defendants acted as a "direct result of an internal custom or practice that is not written or formally adopted, but that is a pervasive, longstanding practice." Compl. ¶ 70. Tatum thus seems to allege a practice that would fall into the third category cited in *Jones*. 182 F. Supp. 3d at 158 (explaining a plaintiff may plead facts of a policy or custom by alleging "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"). But his allegations cannot survive the motion to dismiss because Tatum does not even say what the alleged "internal custom or practice" was. Compl. ¶ 70.

Liberally construing the Complaint, Tatum might mean that DHS has a policy to X-ray all packages or require shelter residents to open packages upon request. *See, e.g.*, *id.* ¶ 34 (explaining that "they treat all packages from the mail carrier" in the manner that they treated his package). For example, in his Opposition, Tatum contends that the City "conditioned and sanctioned the practices of shelter providers and DHS police interfering and intercepting [Tatum's] mail and parcel" and that this was "eviden[ced] by the fact that the City, through its Office of the Ombudsman (DHS) refused to process [Tatum's] grievances pertaining to his right to privacy." Opposition at 4. This

appears to be a gripe with the City's failure to respond to a supposed grievance that Tatum filed, rather than an allegation that an unconstitutional policy or custom exists. Further, whether such a policy or custom exists is seemingly undercut by another portion of Tatum's Opposition in which he explains that he now lives at a different shelter and that location does not have a "scanner or magnometer" for packages. Opposition at 5. Still, he says that at the new shelter, private security guards direct residents to open packages in their presence and "let them go through [the packages]." *Id.* All this to say, the Court cannot glean from the face of the Complaint the City's "policy or custom" that Tatum alleges violated his constitutional rights. And even assuming Tatum did plead facts alleging such a policy or custom, he fails to allege how it violated those rights.

The Court thus dismisses Tatum's claim brought under a theory of *Monell* liability as well.[8]

**D. Leave to Amend**

Tatum requests leave to amend if the Court dismisses the Complaint. Opposition at 5. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [the litigant] has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). "[A] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (alterations in original) (internal quotation marks omitted). In accordance with this case law, and particularly because

[8] The City Defendants argue that, to the extent the Court reads the Complaint as pleading claims pursuant to state law, they are procedurally barred. Motion at 17-18. The Complaint does not mention any causes of action besides 42 U.S.C. § 1983, and the Opposition also does not say anything about purported state law claims, even after the City raised the possibility that Tatum might be proceeding under those causes of action too. The Court thus does not construe the Complaint as raising state law claims and does not address the City Defendants' arguments for why such claims should be dismissed.

Tatum's First Amendment claim and theory of *Monell* liability fail as insufficiently pleaded, the Court will grant Tatum leave to file an amended complaint.

## IV. Conclusion

For these reasons, the City Defendants' motion to dismiss the Complaint is granted without prejudice to filing an amended complaint. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 35.

If Tatum chooses to file an amended complaint, he must do so by October 8, 2021. Because any amended complaint will completely replace, not supplement, the Complaint, any facts or claims that Tatum wishes to maintain must be included in the amended complaint. If Tatum fails to file an amended complaint by October 8, 2021, and he cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to terminate the City, Sergeant Facey, Officer Davis, and Officer Matos as Defendants in this action. If Tatum fails to file an amended complaint by October 8, 2021, the Complaint will remain the operative pleading against Barnes, who has not moved to dismiss the Complaint, and the Court will issue an order directing Tatum and Barnes to submit a proposed case management plan and scheduling order.

Although Tatum consented to receive electronic service in this action, *see* Dkt. 20, the Clerk of Court is respectfully directed to mail a paper copy of this Opinion and Order to Tatum.

SO ORDERED.

Dated: September 8, 2021
New York, New York

JOHN P. CRONAN
United States District Judge